UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 11-59449

ASMA MICHAEL HALABU,                                      Chapter 13

            Debtor.                                       Judge Thomas J. Tucker

_____ /

**OPINION REGARDING COMERICA BANK'S MOTION
FOR ADEQUATE PROTECTION PAYMENTS
FROM THE FUNDS HELD BY THE CHAPTER 13 TRUSTEE
AND MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM**

## I. Introduction

This Chapter 13 case did not result in a confirmed plan, but rather was dismissed. In this

post-dismissal stage, the Court must resolve a dispute about real estate taxes on the Debtor's

home, which were incurred after the case was filed but before the case was dismissed. Among

other things, this requires the application of some new provisions that were added to the

Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

("BAPCPA"). The new provisions are in one of the Code sections concerning administrative

expenses, § 503(b)(1); namely: (1) new language that was added to § 503(b)(1)(B); and (2) a new

subsection, § 503(b)(1)(D).

This case is before the Court on two motions filed by Comerica Bank ("Comerica"),

entitled (1) "Comerica's Motion for Adequate Protection Payments From The Funds Held By

The Chapter 13 Trustee" (Docket # 77, the "Adequate Protection Motion"); and (2) "Comerica

Bank's Motion Seeking Allowance of an Administrative Claim under § 503(b) for Real Estate

Taxes Relating to Debtor's Residence" (Docket # 97, the "§ 503(b) Motion")(collectively, the

"Motions"). The Chapter 13 Trustee objected to the Adequate Protection Motion, and the Debtor and her counsel objected to both Motions. After holding hearings, the Court took the Motions under advisement.

For the reasons stated in this opinion, the Court will deny the Adequate Protection Motion, and will order further proceedings regarding the § 503(b)(1) Motion.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and these contested matters under 28 U.S.C. §§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). Each of these matters is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). These matters also are "core" because they fall within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). These matters are proceedings "arising under title 11" because they are "created or determined by a statutory provision of title 11," *id.*, namely, the Bankruptcy Code sections discussed in this opinion. And these matters are proceedings "arising in" a case under title 11, because they are proceedings that "by their very nature, could arise only in bankruptcy cases." *Id.*

## III. Background

The Debtor in this case filed a voluntary bankruptcy petition under Chapter 13 on July 18, 2011. The case was dismissed on February 24, 2012, based on a motion made by the Chapter 13

2

Trustee at the adjourned confirmation hearing on February 16, 2012,[1] which the Debtor did not oppose.

While the Chapter 13 case was pending, the Debtor made payments to the Chapter 13 Trustee under her proposed Chapter 13 plan. Such pre-confirmation payments are required by 11 U.S.C. § 1326(a)(1)(A).[2] According to Comerica, the Trustee had $11,241.00 of such funds on hand, as of February 16, 2012.[3] In an order entered on March 15, 2012, the Court ordered the Trustee to continue to hold all funds on hand in this case, pending further order.[4]

In each of its Motions, Comerica asks the Court to order that the Trustee pay all of the funds on hand to Comerica, except for the $100.00 administrative expense that the Court has ordered be paid to the Trustee, in the dismissal order. Comerica seeks payment of these funds to itself, or in the alternative, to the taxing authority that is owed real estate taxes, rather than to Debtor's counsel or Debtor.

Comerica holds a mortgage on Debtor's residence, located at 3765 Indian Trail, Orchard Lake, Michigan. The mortgage secures a debt to Comerica of more than $1.2 million, which

---

[1] The Trustee's oral motion to dismiss was made during the status conference regarding confirmation, on the morning of February 16, 2012. Because it was not opposed by the Debtor, the motion was granted without a hearing before the Court, after the Trustee submitted a proposed dismissal order. The dismissal order was entered on February 24, 2012 (Docket # 84).

[2] That Code section states:

> Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>
> (A) proposed by the plan to the trustee[.]

[3] *See* § 503(b) Motion at 2 ¶ 9.

[4] Order, filed March 15, 2012 (Docket # 92) at ¶ 6.

3

Comerica says exceeds the value of the property. Comerica alleges that the Debtor is in default. Among other defaults alleged is Debtor's failure to timely pay the real estate taxes on the residence, as required by the mortgage. Comerica argues, for example, and it is undisputed, that Debtor did not pay the 2011 real estate taxes on the property, in the amount of at least $15,994.69. The parties agree that under Michigan law, such unpaid real estate taxes are secured by a statutory first lien on the property, which takes priority over Comerica's mortgage lien. Because of this, Debtor's failure to pay any real estate taxes has reduced the value of Comerica's mortgage lien.

Comerica asks the Court to order the Trustee to pay the funds on hand to Comerica, or in the alternative, to the taxing authority, based on either of two legal theories — first, as a form of adequate protection of Comerica' mortgage lien under 11 U.S.C. § 363(e); and second, as an administrative expense allowable under 11 U.S.C. § 503(b).

Based on the Court's having granted its fee application, Debtor's counsel has an allowed administrative expense in this case of $12,171.98, for its allowed attorney fees and reimbursement of expenses, of which $9,671.98 is unpaid after application of $2,500.00 in payments that Debtor's counsel previously received from the Debtor.[5] In Chapter 13 cases, the Bankruptcy Code permits the Court to allow an administrative expense to the Debtor's attorney for reasonable attorney fees and expenses incurred in representing the Debtor. *See* 11 U.S.C. §§ 330(a)(4)(B); 503(b)(2).

Debtor and her counsel object to Comerica's Motions. They argue that Comerica is not entitled to any payment from the funds on hand with the Trustee. Rather, they argue, the Trustee

---

[5] *See* Order Approving First Fee Application, etc., filed March 22, 2012 (Docket # 95).

should be required to disburse the funds on hand as follows: first, to the Trustee in the amount of $100.00; then second, to Debtor's counsel in the amount of $9,671.98; and then third, the remainder to the Debtor.

## IV.  Discussion

### A.  The Adequate Protection Motion

Comerica's Adequate Protection Motion must be denied, for the following reasons. Because this Chapter 13 case was dismissed without confirmation of a plan, 11 U.S.C. § 1326(a)(2) governs what the Chapter 13 Trustee must do with any funds she has left on hand from Debtor's plan payments.  That section states:

> A payment made under [§ 1326(a)(1)(A)] shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).**

(emphasis added).  This Code section requires the Trustee to return all the funds on hand to the Debtor, with only two exceptions.  One of these exceptions is that the Trustee must pay all administrative expenses allowed under § 503(b) before paying any of the funds to the Debtor. That exception is discussed in the next section of this opinion.

The other exception in § 1326(a)(2) is for a specific form of adequate protection payments, but it does not apply here.  That exception requires the Trustee to pay any "payments not previously paid" that are "due and owing to creditors pursuant to paragraph (3)."  The reference to "paragraph (3)" is to § 1326(a)(3), which says that:

5

> Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan.

11 U.S.C. § 1326(a)(3).  The reference to "payments required under this subsection," in turn, is to pre-confirmation payments that a Chapter 13 debtor is required to make to certain creditors under § 1326(a)(1)(B) and (C).  Those subsections require, in essence, that in addition to making payments to the Trustee, the debtor also must make payments, beginning no later than 30 days after the petition date, directly to two types of creditors, in the following amounts: (1) in the amount "scheduled in a lease of personal property" and that becomes due post-petition to the lessor; and (2) an amount "that provides adequate protection" to "a creditor holding an allowed claim secured by **personal** property," to the extent the secured claim is a purchase money security interest (emphasis added).  In each case, the debtor is to reduce the amount of her payments to the Trustee that would otherwise be due under § 1326(a)(1), by the amount of these direct creditor payments.[6]

---

[6] These Code provisions state:

> Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
> . . .

>> (B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment; and

>> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion

6

Neither of these direct-creditor payment provisions apply to Comerica in this case. Comerica is not a lessor of personal property to the Debtor. Nor does Comerica have a purchase money security interest in any of the Debtor's *personal property*. Rather, it has a mortgage lien in Debtor's *real estate*. Thus, the Debtor was not required by these statutory provisions to make any payments directly to Comerica, as "adequate protection" under § 1326(a)(1)(C) or otherwise. As a result, there neither were nor are any payments "due and owing to [Comerica] pursuant to [§ 1326(a)(3)]" within the meaning of § 1326(a)(2).

That leaves only the provision in § 1326(a)(2) that requires the Trustee to pay allowed administrative claims under § 503(b), before paying the funds on hand back to the Debtor. Section 1326(a)(2) thus *prohibits* the Trustee from paying any of the funds on hand to Comerica based on a theory of "adequate protection" under Code § 363(f), or under § 362(d), or under any other section of the Code. Rather, the only way the Trustee can pay any funds for real estate taxes, to either Comerica or to the taxing authority, is if either of those parties has an administrative claim allowed under § 503(b). So Comerica's Adequate Protection Motion must be denied.[7]

## B. The § 503(b) Motion

In its § 503(b) Motion, Comerica seeks an order requiring the Trustee to use funds on

---

of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

11 U.S.C. § 1326(a)(1)(B) and (C).

[7] There may be other reasons to deny Comerica's Adequate Protection Motion, but the Court finds it unnecessary to discuss them.

hand to pay real estate taxes on Debtor's home that have been incurred by the bankruptcy estate while the Chapter 13 case was pending. Comerica asks that the Trustee be required to pay such taxes either directly to the taxing authority, or in the alternative, to Comerica so that Comerica may use those funds to pay the taxes. Comerica argues that there is an allowed administrative claim for such taxes under § 503(b), specifically under § 503(b)(1)(B).

In opposing the § 503(b) Motion, Debtor and her counsel argue that (1) the Motion is untimely, and the Court lacks jurisdiction to grant the requested relief, because the § 503(b) Motion was filed only after entry of the order dismissing this case, and the dismissal order did not reserve jurisdiction to consider such a motion; (2) Comerica lacks standing to seek allowance of an administrative claim for real estate taxes, because any such claim belongs only to the taxing authority, and Comerica lacks standing to seek such relief on behalf of the taxing authority; and (3) the unpaid real estate taxes cited by Comerica were actually incurred by the Debtor before this bankruptcy case was filed, and therefore were not incurred by the estate, so there cannot be an allowed administrative claim.

## 1. The 2005 amendments to § 503(b)

In considering the arguments of the parties, it is important to note that the relevant provisions in 11 U.S.C. § 503(b) were amended in 2005 by BAPCPA. Before the 2005 amendments, the relevant provisions in § 503 provided as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

8

(1)

. . .

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title;

11 U.S.C. § 503 (pre-2005 version). Under this former version of § 503, a governmental unit seeking allowance of an administrative claim for a tax incurred by the estate was required to file a request for payment of that administrative expense, either "timely," or "tardily" if permitted by the Court "for cause." The 2005 amendments changed that, and added the following language to § 503 (highlighted in bold below):

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)

. . .

(B) any tax—

(i) incurred by the estate, **whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both,** except a tax of a kind specified in section 507(a)(8) of this title;

. . .

**(D) notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense;**

9

11 U.S.C. § 503 (emphasis added).

### 2. The governmental unit's unasserted, but allowable, administrative claim

Under current law, therefore, a governmental unit is not required to file any request for payment of an administrative expense — "timely," "tardily," or at all — in order to be allowed an administrative expense for a tax incurred by the estate under § 503(b)(1)(B)(i). Thus, the fact that no taxing authority has filed such a request in this case does not necessarily mean that no such administrative expense can be allowed.

This creates procedural questions for the Chapter 13 Trustee, and for the Court. The real estate taxing authority here, which appears to be either Orchard Lake Village, Michigan or the Oakland County Treasurer, has an allowed administrative claim if there are any real estate taxes that were incurred by the Chapter 13 bankruptcy estate that remain unpaid, and the Trustee, in turn, must pay any such allowed administrative claim from the funds on hand, under § 1326(a)(2), along with other allowed administrative expenses. But how is the Chapter 13 Trustee to know whether such taxing authority actually has such an administrative claim, and if so, what is the amount of such claim, when the Trustee has heard nothing from the taxing authority? In this case, no governmental unit has filed any claim for unpaid real estate taxes. And Debtor's schedules and plan make no mention of any real estate taxes. What is a Chapter 13 Trustee in this situation to do?

The parties have not addressed this question, and the Court has been unable to find any case law addressing it. Bankruptcy scholars have noted the peculiar situation created by § 503(b)(1)(D). For example, Collier's treatise on bankruptcy notes the following:

Subsection (b)(1)(D) puts the burden on the trustee to ascertain whether there are any administrative expense taxes and to have the amount of any such taxes determined. It should be noted that subsection (b)(1)(D) does not abrogate the requirement of the preamble to section 503(b) that requires notice and a hearing before allowance of an administrative expense. It will be the trustee's responsibility, rather than the governmental unit's responsibility, to provide the notice and obtain the hearing.

4 *Collier on Bankruptcy* ¶ 503.02[3], at 503-11 to 503-12 (Alan N. Resnick & Henry J. Sommer

eds., 16th ed.). Judge Lundin's Chapter 13 treatise notes the following:

It is common for Chapter 13 debtors to own property that generates property taxes during the Chapter 13 case. Sometimes those taxes are *in rem*, sometimes *in personam* and sometimes both. In all such circumstances, property taxes incurred by a Chapter 13 estate are administrative expenses entitled to second priority and full payment through the Chapter 13 plan.

BAPCPA then amended § 503(b)(1)(D) to provide that a governmental unit "shall not be required to file a request for the payment of an expense described in [§ 503(b)(1)(B)] as a condition of its being an allowed administrative expense." **It is not obvious how a governmental unit with an administrative expense for a tax incurred by a Chapter 13 estate will get paid during the Chapter 13 case if the governmental unit does not file a request for payment consistent with § 503(a).** Nonetheless, as amended by BAPCPA, § 503(b)(1)(D) allows an administrative expense for a postpetition tax incurred by a Chapter 13 estate even when the taxing authority does not file a request for payment.

Section 503(a) was amended in 1994 to add the requirement that a "timely" request for payment of an administrative expense must be filed except that the bankruptcy court, for cause, can allow a tardily filed request for payment of an administrative expense. BAPCPA absolves governmental units of not just the timeliness condition added by the 1994 amendment but of any requirement to file a request for payment of an administrative expense tax incurred by a Chapter 13 estate.

**It is not clear that this relief will be good for governmental units holding tax claims that would be entitled to administrative expense status in a Chapter 13 case. Unless and**

11

> **until a governmental unit files a request for payment, the Chapter 13 trustee is not likely to be aware of any administrative expense for taxes and certainly won't be paying that claim.**

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Edition, § 513.1 at ¶¶ 3-6, Sec. Rev. Mar. 29, 2006, www.CH13online.com (emphasis added).

What is a Chapter 13 trustee to do? For example, must a Chapter 13 trustee review every Chapter 13 case that is dismissed before confirmation, in which (1) the trustee has funds on hand; and (2) the Debtor owns real estate, and investigate whether the estate incurred real estate taxes during the pendency of the case that were not paid? And if so, what exactly must the trustee do to satisfy such a duty to investigate, particularly in a case where the taxing authority has not been heard from? As quoted above, Collier's suggests, without citing any case authority, that there is some sort of duty to investigate on the part of bankruptcy trustees, but Collier's does not discuss that duty to investigate in any detail.

This case does not require the Court to answer all of the questions just posed. In this case, it is enough to require further proceedings that a creditor (Comerica) filed a motion that brought to the Chapter 13 Trustee's (and the Court's) attention that there are or may be unpaid real estate taxes incurred by the estate. And that creditor did so well before the Trustee would have been required to disburse the funds on hand under § 1326(a)(2). The Court concludes that in this situation, at least, the Trustee must investigate, and the Court must determine, whether the taxing authority has an allowed administrative claim for unpaid real estate taxes incurred by the bankruptcy estate. And that must be accomplished using the further proceedings described at the end of this opinion.

12

Comerica first brought this issue to the attention of the Trustee and the Court when it filed the Adequate Protection Motion, on February 16, 2012. In that motion, Comerica alleged that the 2011 real property taxes on Debtor's home, totaling "at least $15,994.69" were "unpaid" and that "post-petition Debtor . . . has not paid real property taxes."[8] This motion, which Comerica filed eight days before the entry of the order dismissing the case,[9] sufficiently raised the possibility of unpaid real estate taxes incurred by the bankruptcy estate, so as to require further proceedings to determine the issue. This is so even though the Adequate Protection Motion did not ask for the allowance of an administrative claim for such taxes, but rather asked only that the Trustee pay all funds on hand to Comerica as adequate protection of Comerica's mortgage lien. And this is so even though the Court must deny the Adequate Protection Motion for the reasons stated earlier in this opinion.

The pendency of the Adequate Protection Motion caused the Chapter 13 Trustee to delay disbursing funds on hand after dismissal of this case, until the motion could be heard and decided. During the first hearing held on the Adequate Protection Motion on March 15, 2012, the Court raised the question whether § 1326(a)(2) required denial of the Adequate Protection Motion, on the ground that the Trustee could not pay funds to Comerica for unpaid real estate taxes unless such taxes were an allowed administrative expense under § 503(b). Following that hearing, the Court entered an order allowing Comerica to file a further brief in support of its Adequate Protection Motion, and allowing Comerica to file a motion seeking allowance of an

---

[8] Adequate Protection Motion (Docket # 77) at ¶¶ 7, 8.

[9] The dismissal order (Docket # 84) was filed on February 24, 2012.

13

administrative claim under § 503(b).[10]  Comerica then promptly filed its § 503(b) Motion.  (The Court's Order also required the Chapter 13 Trustee to retain all funds on hand "[u]ntil further order.")[11]

Comerica's § 503(b) Motion expressly raises the question whether the Court must allow an administrative expense for unpaid real estate taxes incurred by the bankruptcy estate under § 503(b), in favor of either Comerica or the relevant taxing authority.

### 3.  Debtor's arguments

Against this backdrop, the Court will now consider the Debtor's arguments opposing the § 503(b) Motion.

#### a.  Comerica's standing to raise the issue of unpaid taxes

Debtor argues that Comerica has no basis or standing to seek allowance of an administrative claim for unpaid real estate taxes, either on its own behalf or on behalf of any taxing authority.  The Court concludes that none of the statutory provisions cited by Comerica give Comerica itself the right to an allowed administrative claim, or the right to assert an administrative claim on behalf of the taxing authority.

First, any real estate tax incurred by the bankruptcy estate is a debt owing to the relevant taxing authority, not to Comerica.  This is so even though Comerica claims that the Debtor was contractually obligated to Comerica, under Comerica's mortgage, to pay all real estate taxes on a timely basis.  All that means is that Comerica may have a post-petition claim against the Debtor for breach of contract, for the Debtor's failure to timely pay real estate taxes to the taxing

---

[10]  Order Regarding Further Proceedings, etc. (Docket # 92).

[11]  *Id.* at ¶ 6.

14

authority.  That is no basis for allowing *Comerica* an administrative expense.  Because the debt

for the actual real estate taxes is owed only to the relevant "governmental unit," only that party

may be allowed an administrative expense under § 503(b)(1)(B)(i).

Second, nothing in § 503(b)(1)(B) or (D) indicates that any party other than the taxing

authority itself is to have an allowed administrative claim for a tax incurred by the estate.  If

anything, the wording of § 503(b)(1)(D) suggests that only the relevant "governmental unit" is to

be allowed such an administrative expense, when that section says that "a governmental unit"

"shall not be required to file a request for the payment of an expense" described in

§ 503(b)(1)(B) "as a condition of its being allowed an administrative expense."

Third, Comerica cites § 501(b), which states:

> If a creditor does not timely file a proof of such creditor's claim, an
> entity that is liable to such creditor with the debtor, or that has
> secured such creditor, may file a proof of such claim.

11 U.S.C. § 501(b).  This section does not confer standing on Comerica.  Comerica is not liable

*to* the taxing authority, and *with* the Debtor, for any real estate taxes.  Nor has Comerica alleged

any facts to show that Comerica "has secured such creditor" for the Debtor's debt for real estate

taxes.  The phrase "or that has secured such creditor" in § 501(b) means that an entity has acted

as a surety or otherwise obligated itself personally to pay the debt in question to the creditor, if

the Debtor fails to do so, or that the entity has given a security interest or lien of some sort in that

entity's own property to secure payment by the Debtor of the debt in question.  Comerica has not

alleged any facts to show that it is such an entity with respect to the Debtor's obligation to pay

real estate taxes.  It is true that the value of Comerica's mortgage lien is adversely affected by the

Debtor's failure to timely pay real estate taxes, because such taxes are secured by a statutory first

15

lien that primes Comerica's mortgage lien. But Comerica is not liable to the taxing authority for such taxes, and Comerica has not secured the taxing authority in any way for such taxes.

Fourth, Comerica relies on Bankruptcy Code § 1305(a)(1), but that reliance is misplaced. Section 1305(a) states:

> A proof of claim may be filed by any entity that holds a claim against the debtor ——
>
> (1) for taxes that become payable to a governmental unit while the case is pending; or
>
> (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or for services necessary for the debtor's performance under the plan.

11 U.S.C. § 1305(a). Comerica interprets § 1305(a)(1) to mean that *any creditor* in this case that holds a claim of any kind against the Debtor, and therefore Comerica, may file a proof of claim for real estate taxes that became payable to the taxing authority while this Chapter 13 case was pending. Comerica cites no authority in support of its broad reading of this statute, and the Court must reject Comerica's interpretation. Under § 1305(a)(1), the only creditor of the Debtor that could file a claim for taxes that become payable to a governmental unit is that governmental unit itself. If the phrase in § 1305(a) "any entity that holds a claim against the debtor," is interpreted to mean any creditor in the bankruptcy case, then § 1305(a) would mean that any creditor in the Chapter 13 bankruptcy case could file claims for taxes, and for post-petition consumer debts under § 1305(a)(2), that are *owed to other creditors*. That clearly would be inconsistent with the purpose and scope of § 1305(a).

The purpose of § 1305(a) is to give creditors holding certain types of postpetition claims the choice of (1) filing a proof of claim in order to participate in distributions under the Chapter

13 Plan and thereby be bound by the terms of the Plan; or (2) not filing a proof of claim and collecting on their claims outside of bankruptcy once the bankruptcy case is closed. Allowing the debtor, the trustee, or another creditor to file a proof of claim on behalf of such creditors with post-petition claims would allow other parties to drag such post-petition creditors into the bankruptcy case against their will. This would deprive such creditors of the choice afforded them under § 1305(a), and thus would be inconsistent with the purpose of § 1305(a). One bankruptcy treatise explains § 1305(a) in this way:

> Section 1305(a) is *permissive*. There is no requirement that the holder [of "certain types of postpetition claims against the debtor"] file proof of a postpetition claim under section 1305. The congressional purpose behind section 1305 is to *permit* the same treatment of certain postpetition credit extended to the chapter 13 debtor as for a prepetition claim for purposes of proof, allowance, and priority. **The holder of the postpetition claim may refrain from filing proof of the postpetition claim, thereby waiving the possibility of a distribution under the chapter 13 plan, in hopes of recovering against the debtor after the closing of the case.** A discharge granted in a chapter 13 case would not relieve the debtor of liability on a postpetition claim, unless the holder of the claim has filed a postpetition claim and the debt has been provided for by the plan.
>
> . . .
>
> **However, unlike other types of claims, only the holder of [certain "specified types of consumer debt or tax claims] may file the claim and thereby choose to become involved in the chapter 13 case**; a debtor cannot file such claim on behalf of the holder to bring the holder into the case involuntarily.

8 *Collier on Bankruptcy* ¶ 1305.02, at 1305-4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)(italics and bold emphasis added; footnotes omitted); *see also Rents v. Benson* (*In re Benson*), 116 B.R. 606, 607-08 (Bankr. S.D. Ohio 1990)(holding that "[o]nly the holder of a

§ 1305(a) claim may file proof of the claim" and that "the debtor [could not, by filing a proof of claim on behalf of a postpetition claimant,] make an unwilling postpetition claimant part of her chapter 13 plan")(citations omitted).

A further problem with Comerica's argument is that while § 1305(a)(1) applies to taxes *incurred by the debtor*, which become payable while the case is pending, it does not apply to taxes incurred *by the Chapter 13 bankruptcy estate*. Only taxes incurred by the bankruptcy estate may be treated as an allowed administrative expense claim under § 503(b)(1)(B)(i). As the Court explained in *In re Stokes*, No. 06-11296, 2010 WL 3980232, at *2 (Bankr. E.D. Tenn., Oct. 8, 2010) (footnote omitted):

> The two statutes, however, are not in conflict. They simply apply in different circumstances: § 503(b)(1)(B)(i) applies when the tax is "incurred by the estate" and § 1305(a)(1) applies when the governmental entity "holds a claim against the Debtor.". . . Hence, so long as the property remains property of the estate, § 503(b)(1)(B)(i) applies and § 1305 does not.

Finally, another problem with Comerica's argument under § 1305(a)(1) is that even if Comerica could file a proof of claim for taxes under § 1305(a)(1), § 1305(b) would require that such a claim be allowed as a pre-petition claim, rather than as an administrative claim. Section 1305(b) states:

> Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 1305(b).

For these reasons, the Court agrees with the Debtor that Comerica does not have any basis to seek allowance of an administrative claim in favor of itself, or in favor of the taxing authority. But that does not end the matter, for the reasons discussed above. The taxing authority has an allowed administrative expense for any unpaid real estate tax incurred by the Chapter 13 bankruptcy estate, even though the taxing authority (so far, at least) has not been heard from. So further proceedings, as described below, are required.

### b. Debtor's jurisdictional argument

Debtor argues that no administrative claim may be allowed for unpaid real estate taxes, because the Court's order dismissing this case did not retain jurisdiction to determine whether any such administrative claim must be allowed. Debtor argues that upon dismissal of this Chapter 13 case, the property of the bankruptcy estate revested with the Debtor, and the Court retains no jurisdiction to adjudicate competing claims to such property. The main problem with this argument, however, is that it ignores § 1326(a)(2). Debtor's rights to the funds on hand with the Trustee are subject to § 1326(a)(2). The Court certainly has jurisdiction, after the dismissal of the Chapter 13 case, to decide any disputes regarding what payments the Chapter 13 Trustee must make from the funds on hand, under § 1326(a)(2). Similarly, the Court has jurisdiction to determine what allowed administrative claims under § 503(b) must be paid under § 1326(a)(2), and in what amounts.

The cases cited by the Debtor in support of her jurisdictional argument hold that a party seeking allowance of an administrative claim may not file a request for payment of such claim for the first time after dismissal of the Chapter 13 case, if the dismissal order has not retained jurisdiction to consider such a motion. But the cases cited by the Debtor did not involve the

special type of administrative claim at issue in this case. Rather, Debtor's cases involved an administrative expense claim of the type that § 503(a) requires to be "timely file[d]," or "tardily filed" if permitted by the Court "for cause." By contrast, the type of administrative expense at issue in this case is one that need not be filed at all in order to be allowed, under § 503(b)(1)(D).

Debtor relies heavily on *In re Lewis*, 346 B.R. 89 (Bankr. E.D. Pa. 2006). Debtor cites that case for its holding that after a Chapter 13 case is dismissed, no administrative claim for the debtor's attorney fees may be allowed, unless the attorney's fee application at least had been filed before the dismissal order was entered. According to Debtor, *Lewis* held that at least when the dismissal order does not order otherwise, the appropriate rule is that a fee application filed after the dismissal of the case cannot be allowed as an administrative expense, such that it can be paid by the Chapter 13 trustee from funds on hand under § 1326(a)(2). *See* 346 B.R. at 111-12.[12]

The *Lewis* case is both instructional and distinguishable from this case. The line that *Lewis* drew is not a jurisdictional one, but rather is based on the *Lewis* court's view of what constitutes "cause" under 11 U.S.C. § 349(b)(3), when the debtor's attorney seeks allowance of fees as an administrative expense in a dismissed Chapter 13 case. Section 349 concerns what the various effects are of the dismissal of a bankruptcy case. In a Chapter 13 case, § 349(b)(3) means that as a general rule, all the property of the bankruptcy estate revests in the Debtor when

_____

[12] In this case, Debtor's attorneys filed their fee application the day before the dismissal order was entered (Docket # 83), and the application was granted almost one month after entry of the dismissal order (Docket # 95). And the dismissal order included a standard provision saying that:

> [T]he debtor(s) attorney shall be awarded the total sum of **FEE APP** as compensation. The Trustee shall pay this sum, less any amount paid previously, after payment of Clerk's and Trustee's fees, to the extent funds are available.

Order Dismissing Chapter 13 Case, filed February 24, 2012 (Docket # 84)(emphasis in original).

the case is dismissed. But this general rule is subject to such exceptions as the Court may order,

"for cause." Section 349(b)(3) states:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a
> case other than under section 742 of this title—
> . . .
>
> (3) revests the property of the estate in the entity in which such
> property was vested immediately before the commencement of the
> case under this title.

11 U.S.C. § 349(b)(3). The *Lewis* court summarized its view of how § 349(b)(3) interacts with

§ 1326(a)(2) as follows:

> I conclude that: (1) § 349(b)(3) is the controlling provision in
> determining the disposition of all estate property upon dismissal of
> a bankruptcy case; (2) the purpose of § 1326(a)(2)—to surcharge
> the debtor for the allowed costs of administration if a chapter 13
> plan is not confirmed—is a sufficient basis for the court to exercise
> its discretion under § 349(b)(3) to override the presumptive
> revesting of the undistributed plan payments "for cause" upon
> dismissal of a chapter 13 case; and (3) if a request for the
> allowance of an administrative expense is pending at the time of
> dismissal of a chapter 13 case, the asserted entitlement ordinarily
> will constitute "cause" for the entry of an order modifying the
> presumptive revesting of estate property under § 349(b)(3).

346 B.R. at 105.

In applying the rule it announced to two cases before it, the *Lewis* court denied the fee

application of the debtor's attorney in the case in which that application was filed after entry of

the dismissal order (the *Nesmith* case). 346 B.R. at 113-115. But in the other case before it, in

which the debtor's attorney filed the fee application shortly before the dismissal order was

entered (the *Lewis* case), the *Lewis* court found "cause" under § 349(b)(3) to allow that fee

application to be considered, so that if the application were granted, the fees would be an allowed

administrative claim subject to § 1326(a)(2).

After reaching this result, the *Lewis* court did more. The court also ruled that because it was opening the door to the debtor attorney's fee application, all creditors in the Chapter 13 case should be given notice and an opportunity to file their own request for payment of an administrative expense if they wished to do so, even though none of the creditors had done so before the case was dismissed. 346 B.R. at 112, 115. First, the court noted this:

> The debtor's counsel, by virtue of the information available to him due to his role in the case, is likely to be in a far better position to recognize when a case is likely to be dismissed than the debtor's creditors and therefore, is also in a far better position to initiate a request that the court exercise its discretion under § 349(b)(3). Creditors may have no advance notice that a case is likely to be dismissed. *See* Fed. R. Bankr.P.2002(4) (no requirement that creditors receive notice of dismissal hearings in chapter 13 cases).

346 B.R. at 112. Then the court ruled that:

> In exercising the discretion afforded to the court under § 349(b)(3), I find it more equitable to require that all interested parties be given notice of the potential fund which exists for administrative expenses once the court intervenes to alter the presumptive revesting of estate property. I also consider it to be appropriate for such notice to be provided by the first party invoking the court's power under § 349(b)(3), in this case, [the debtor's counsel]. Therefore, I will conduct a final hearing with respect to the *Lewis Application* after notice to all parties in interest and direct [debtor's counsel] to provide appropriate notice.

*Id.*

The *Lewis* case is instructional for this case, for at least the following points: (1) the rule applied by *Lewis*, that an administrative claim must at least be filed before the dismissal order is entered, is not jurisdictional, but rather is one that the bankruptcy court may relax in a given case, in its discretion, for "cause;" and (2) if the debtor's attorney files a fee application before entry of

22

the dismissal order, the fee application may be considered on the merits as a possible administrative claim, but in that situation the Court should, in fairness to the creditors and in the exercise of its equitable discretion, give notice to all the creditors and also allow them an opportunity to request payment of an administrative expense.

In this case, Debtor's counsel filed a fee application the day before the dismissal order was entered, which was not granted until almost a month after dismissal. Under *Lewis*, for that reason alone, the Court in this case has discretion to require that all creditors, including any taxing authorities, be given notice and an opportunity to file an administrative claim if they wish.

The *Lewis* case is distinguishable from this case in one way, of course, in that the administrative claim at issue in *Lewis* was of the normal kind, *i.e.*, one for which the creditor had to file a "timely" request for payment, or file a "tardy" request for payment, if permitted for cause, under 11 U.S.C. § 503(a). The type of administrative claim at issue in this case — unpaid real estate taxes incurred by the estate — is special, in that it need not be filed at all in order to be allowed, under 11 U.S.C. § 503(b)(1)(D). The type of administrative claim in this case, therefore, presents a stronger case than in *Lewis* for allowing the claim to be asserted after the dismissal of the case.

In this case, the Court must allow an administrative expense for any unpaid real estate tax incurred by the Chapter 13 bankruptcy estate, whether or not the governmental unit has filed a request for payment or allowance of such an administrative expense. Given this mandate, the dismissal of the case does not deprive the Court of jurisdiction or authority to determine whether there is such an allowed administrative expense under § 503(b)(1)(B) and (D). And the Court's dismissal order did not have to expressly retain jurisdiction over the funds on hand with the

Chapter 13 Trustee, because those funds are always subject to the requirements of § 1326(a)(2). The Trustee may pay such funds back to the Debtor only after paying all allowed administrative expenses under § 503(b).

### c. Debtor's argument that the real estate taxes in question were not incurred by the bankruptcy estate

In a Chapter 13 case, a property tax on the debtor's home is "incurred by the estate," within the meaning of § 503(b)(1)(B)(i), if the tax was incurred while the home is property of the bankruptcy estate. *See In re Stokes*, 2010 WL 3980232, at *2. When the Chapter 13 bankruptcy petition is filed, the debtor's home becomes part of the property of the bankruptcy estate, under 11 U.S.C. §§ 1306(a) and 541(a)(1). That may change, however, when and if a plan is confirmed. 11 U.S.C. § 1327(b) states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." In any event, when a Chapter 13 case is dismissed, the property of the estate revests in the debtor, under 11 U.S.C. § 349(b), as discussed above.

In this Chapter 13 case no plan was confirmed. Any property tax on Debtor's home that was incurred between the dates of July 18, 2011 (the petition date) and February 24, 2012 (the dismissal date) was "incurred by the estate" within the meaning of § 503(b)(1)(B)(i).[13]

Comerica's § 503(b) Motion initially focused on the unpaid 2011 real estate taxes on Debtor's home, in the amount $15,994.69. Debtor argues that under Michigan law, these 2011

---

[13] The rule is different with respect to income taxes. In a Chapter 13 case, as in a Chapter 12 case, the bankruptcy estate is not a separate taxable entity for purposes of federal, state, and local income taxes, and the estate does not incur such income taxes. Rather, only the bankruptcy debtor incurs income taxes. *See Hall v. United States*, 132 S. Ct. 1882, 1887-91 (2012); 11 U.S.C. § 346. But that rule does not extend to state or local property taxes.

real estate taxes were incurred by Debtor on December 31, 2010, well before Debtor filed her

bankruptcy petition on July 18, 2011. As a result, Debtor argues, the 2011 real estate taxes were

not incurred by the Chapter 13 bankruptcy estate, and therefore cannot be an allowed

administrative expense under § 503(b)(1)(B)(i). Comerica's response to this argument is that if

the 2011 real estate taxes were incurred on December 31, 2010, as Debtor says, then there were

2012 real estate taxes that were incurred on December 31, 2011, while this bankruptcy case was

pending, in an amount similar to the amount of the 2011 taxes. So, Comerica says, the

bankruptcy estate incurred unpaid real estate taxes, either for 2011 or for 2012, one or the other,

in an amount approximating $15,994.69, and an administrative expense must be allowed.

Comerica's "either-or" argument may be correct, as far as it goes. But this Court will not

decide which year's taxes — 2011 or 2012 — were incurred by the estate, or the amount of such

taxes incurred by the estate that remain unpaid, without first giving the taxing authority notice

and an opportunity to be heard on these issues. For now it is enough to say that there is reason to

believe that the bankruptcy estate incurred real estate taxes that have not been paid.

### d. Debtor's other arguments

Debtor makes two other arguments. First, Debtor argues that because any claim the

taxing authority has for unpaid property taxes is secured by a lien, under Michigan law, the

taxing authority cannot have an administrative claim for such taxes. Here, Debtor relies on the

general rule that a secured claim cannot be an administrative claim. But the cases cited by

Debtor all predate the 2005 BAPCPA amendment to § 503(b)(1)(B)(i), and as amended, that

section clearly establishes an exception to the general rule cited by Debtor. Section

503(b)(1)(B)(i) now says that the taxing authority has an allowed administrative claim, whether

the tax is "secured or unsecured."

Finally, Debtor argues that any administrative claim for unpaid property taxes incurred on Debtor's home, while it was property of the bankruptcy estate, is subject to disallowance under 11 U.S.C. § 502(b)(3). The Court declines to address this argument at this time. Rather, the Court will defer consideration of this argument until after the taxing authority has been given notice and an opportunity to be heard regarding this argument, as part of the further proceedings described in the next section of this opinion.

### C. Further proceedings

The Court will enter a separate order scheduling further proceedings on Comerica's § 503(b) Motion, as follows. The Court will require Comerica to serve a copy of the § 503(b) Motion; Debtor's written response to the Motion; Comerica's reply brief in support of the Motion; and this opinion and the related Order, upon Orchard Lake Village, Michigan and the Oakland County Treasurer. Those governmental units, and Comerica, each may file a brief and any exhibits regarding the following questions: (1) whether there are unpaid property taxes on the Debtor's home that were incurred by the bankruptcy estate in this case while the Chapter 13 case was pending; and if so, (2) what is the amount of such unpaid taxes; and (3) whether any administrative claim of the taxing authority, under 11 U.S.C. § 503(b)(1)(B)(i), is barred by 11 U.S.C. § 502(b)(3), as Debtor argues. The Debtor and the Trustee may then file briefs and any exhibits they wish to file, in response to whatever is filed by Comerica and any taxing authority. The Court will consider the further filings, and then will schedule a further hearing.

### V. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying Comerica's

Adequate Protection Motion, and an order regarding further proceedings on Comerica's § 503(b)

Motion.

**Signed on October 26, 2012**                    /s/ Thomas J. Tucker
                                                   **Thomas J. Tucker**
                                                   **United States Bankruptcy Judge**